UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Cornerstone Advisors of Arizona, LLC,      CASE NO: 8:24-cv-00517- TPB-NHA
a Delaware Limited Liability Company,

    Plaintiff,

vs.

Trisa Wetzel, Amy Martel, and
Engage fi, LLC, a Florida Limited Liability
Company,

    Defendants.
_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANT
ENGAGE FI'S TIME SENSITIVE MOTION FOR PROTECTIVE ORDER
AS TO SUBPOENAS DUCES TECUM SERVED ON NONPARTIES**

Plaintiff Cornerstone Advisors of Arizona, LLC ("**Plaintiff**" or "**Cornerstone**"), by and through undersigned counsel, respectfully submits its Opposition to the Time Sensitive Motion for Protective Order as to Subpoenas Duces Tecum Served on Nonparties ("**Motion**") filed by Defendant Engage fi ("**Defendant**" or "**EFI**") [ECF No. 47].

EFI's Motion is not made in good faith. First, the Motion seeks protection of its own purportedly trade secret information (Request(s) for Proposal ["**RFP**"] and Conversion Services Addendum ["**CSA**"] – or their equivalent) while simultaneously arguing that Plaintiff has not sufficiently identified these very same documents as Cornerstone's trade secrets. Instead, EFI's Motion should be treated as a judicial

admission that the RFP, CSA, and any such similar documents described in the subpoena requests ("**similar documents**") are trade secrets for the purpose of this litigation. More troubling, EFI's Motion blatantly misstates Florida law, to the extent that it is applicable, by seeking to stay discovery in this matter until Plaintiff can first "establish it has trade secrets at issue." [ECF No. 47, p. 2]. The Florida District Court of Appeals has rejected the proposition that "a threshold finding as to the existence of the trade secret [is required] in misappropriation cases." *AAR Mfg., Inc. v. Matrix Composites, Inc.*, 98 So. 3d 186, 188 (Fla. Dist. Ct. App. 2012). As outlined in detail herein, Plaintiff has more than sufficiently described its trade secrets with reasonable particularity. Defendant's requests to stay discovery and to limit the valid third-party subpoenas served in this matter are not made in good faith, are premature, and should result in an award of attorney's fees and costs to Plaintiff.

I.   **Brief Factual and Procedural Background.**

On or about February 27, 2024, Plaintiff filed its Complaint against Defendant EFI and four of EFI's current employees (former employees of Cornerstone), namely, Trisa Wetzel, Amy Martel, Joel Morehouse, and Jeffrey Brines, alleging violations of the Defend Trade Secrets Act ("DTSA"), the Florida Uniform Trade Secrets Act ("FUTSA"), the Missouri Uniform Trade Secrets Act ("MUTSA"), the Georgia Uniform Trade Secrets Act ("GUTSA"), the Connecticut Uniform Trade Secrets Act ("CUTSA"), Breach of Contract for violations of non-disclosure provisions and employee/customer non-solicitation provisions, Breach of the Covenant of Good Faith and Fair Dealing, and Tortious Interference with Contractual Relations and

Prospective Business Advantage. [ECF No. 1]. Specifically, Plaintiff alleges that Defendants systemically misappropriated Plaintiff's trade secrets and confidential information in violation of multiple state and federal laws and that they violated and/or interfered with contractual obligations and relationships. Plaintiff amended its Complaint (the First Amended Complaint ["**FAC**"]) on or about April 8, 2024, wherein Plaintiff removed two named individual Defendants (Morehouse and Brines) in favor of arbitration, at the demand of those individual Defendants. [ECF No. 31, 32]. Of note, the allegations and claims against EFI relating to misdeeds associated with Morehouse and Brines remain in the FAC as alleged against EFI.

With regard to the trade secrets at issue in the instant Motion, the FAC identifies its RFP process as Cornerstone's proprietary, trade secret, and confidential information under both state and federal law. [ECF No. 32, ¶ 31]. The FAC provides significant detail about the RFP processes, which are "hundreds of pages and consist of a structured taxonomy of more than 2,500 core processing system function and technical requirements" that Cornerstone uses to evaluate market vendors for clients' specific needs. [*Id.*] The FAC states:

> Cornerstone created its RFP database of detailed requirements through, and as a direct result of, decades of experience in servicing clients, the knowledge and intellectual property of acquired entities, and the expertise of its human capital. The unique and highly specialized RFPs are commercially valuable, providing Cornerstone with a competitive advantage, are not known to the public, and are subject to reasonable effort by Cornerstone to preserve confidentiality (including through the use of client and employee non-disclosure agreements).

[*Id.* at ¶ 32]. The FAC continues to detail the RFP procedures, the ways the RFP procedures qualify for trade secret protection, and how they were misappropriated,

3

including by providing detailed examples of the copied material. [*Id.* at ¶ 31-37, 87-92, 94-101, 106-111].

The FAC also identifies the CSA as Cornerstone's proprietary, trade secret and confidential information under both state and federal law and describes its contents with significant detail. [*Id.* at ¶ 38-41]. For example, the FAC states:

> Cornerstone's substantive Conversion Services Addendum spells out in detail exactly what the vendor is responsible for in these high-risk conversion projects. Through Cornerstone's use of the Conversion Services Addendum, the vendor then becomes contractually obligated to meet those requirements, and failure to meet them could result in financial penalties. Thus, the Conversion Services Addendum provides significant leverage to Cornerstone's clients to ensure a successful conversion. The Addendum was built over many years and hundreds of conversion projects.

[*Id.* at ¶ 40]. Further, the FAC alleges that "the level of detail and accountability included therein, gives Cornerstone a strategic advantage in the industry," that the CSA was subject to client and vendor non-disclosure agreements, and explains how the CSA was misappropriated by Defendants. [*Id.* at ¶ 41, 51, 54-55, 87-97, 102-111]. Plaintiff even provides examples of the language included in the CSA and how that language was directly copied in EFI's version of a similar document. [*Id.* at ¶ 104].

Plaintiff has reason to believe that Alkami and Corelation, as vendors servicing both Cornerstone and EFI clients, possess evidence that will demonstrate Defendants misappropriated and used Cornerstone's RFP, CSA, and similar documents. Significantly, Tim Maron, Chief Revenue Officer at Corelation, reached out to Cornerstone in February 2024, informing Cornerstone "that the language used by Engage fi in its [CSA] equivalent associated with Engage fi's vendor agreements was

4

verbatim or at least very similar to Next Step's (now Cornerstone's) [CSA']." [*See* Declaration of Steve Wildman at **Exhibit A**, ¶ 7]. This disclosure by Mr. Maron first put Cornerstone on notice that Defendants had misappropriated Cornerstone's CSA. Mr. Maron also informed Cornerstone that "before former Next Step and Cornerstone employees Trisa Wetzel and Amy Martel went to Engage fi, Engage fi did not provide core selection and implementation services to its clients." *Id.* at ¶ 8. Mr. Maron indicated to Cornerstone that "he felt uncomfortable that Engage fi was using the [CSA] that was a clear copy of the document belonging to Cornerstone (and previously Next Step)." *Id.* at ¶ 9. Next Step and its' intellectual property were purchased by Cornerstone in approximately December 2021. [*Id.* at ¶ 3].

After filing its Complaint, employees of Alkami (including its Vice President of Product Services, Senior Director of Sales, and Director of Implementations) reached out to Cornerstone to inform Cornerstone that EFI misappropriated Cornerstone's contractual milestone requirements (a similar document to the CSA). *See* Declaration of Chris Miller at **Exhibit B**. Eric Ryan at Alkami informed Cornerstone that Defendant Wetzel admitted to him that although she created the milestone requirements while at Next Step, she considered this document to be her own intellectual property simply because she was its author. *Id.* at ¶ 9. Both Corelation and Alkami are also in possession of RFPs from Cornerstone and EFI.

Thereafter, Plaintiff served Corelation and Alkami with third-party subpoenas pursuant to Rule 45, asking each to produce documents and communications relating to the RFP, CSA, and similar documents. [ECF No. 47-1, 47-2]. EFI now files the

5

instant Motion for the improper purpose of attempting to block disclosure of inculpatory evidence which will very likely conclusively demonstrate EFI misappropriated, is in possession of, and used, Cornerstone's confidential and trade secret information. As otherwise stated, Defendant's Motion is not filed in good faith.

II. **To the extent that Defendant's Motion meets the requirements of Rule 26(c), it constitutes a judicial admission that the RFP and CSA as alleged in the FAC, are trade secrets.**

Rule 26(c) allows a party to seek a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including…requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." The party moving for the protective order must establish "good cause" for the request. Fed. R. Civ. P. 26(c). Good cause "generally signifies a sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987). "In addition, this circuit has superimposed a 'balancing of interests' approach to Rule 26(c)." *Id*. In its Motion, Defendant also asserts that "Florida law requires that a party seeking to protect a trade secret must be the first to describe the trade secret it seeks to protect." [ECF No. 47, p 7]; *citing Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 148 F. Supp. 1322, 1324–25 (S.D. Fla. 2001). In other words, according to Defendant, as the party seeking protection of trade secret information, Defendant must establish good cause and "reveal the information it ultimately seeks to protect." *Id*.

By asserting (1) that the information requested in the subpoenas constitutes EFI's trade secrets, and (2) that in order to protect those trade secrets Defendant must

6

demonstrate good cause and identify the trade secret requiring protection, EFI has made a judicial admission that the RFP, CSA, and other similar documents qualify as trade secrets under the law. EFI cannot, in good faith, argue it has met its burden to protect its own RFP, CSA, and similar documents from disclosure as trade secrets while simultaneously arguing Cornerstone's same RFP, CSA, and similar documents do not qualify for such protection. The requirements for protection and identification are the same under EFI's request for a protective order as Plaintiff's supposed obligation to identify such trade secrets before proceeding with discovery. If EFI has met this standard in the instant Motion, certainly Cornerstone has also sufficiently identified its RFP, CSA, and similar documents as its trade secrets in order to proceed with discovery in this case.

## III. It is not appropriate for this court to use a Florida state court procedural rule to alter the course of discovery in this case.

Without citation to any binding legal authority demonstrating this Court is required to apply a judicially created Florida *state* court rule to Plaintiff's claims, including those brought under federal law and the laws of several other states, Defendant seeks a blanket stay of discovery "until such time that Cornerstone establishes it has trade secrets at issue." [ECF No. 47, p. 2]. EFI's request is in direct contravention of applicable state and federal law.

### A. Defendant's Motion blatantly misstates Florida law.

Even if this Court were to apply Florida law to all of the claims at issue in this case, which Plaintiff denies is appropriate, Defendant flagrantly misstates the law

applicable to trade secret misappropriation cases. EFI's Motion unequivocally states that "[i]n Florida, before Plaintiff can use discovery to obtain EFI's trade secret information, Plaintiff must first **establish that its trade secrets exist**..." [ECF No. 47, p. 3] (emphasis added); On this basis, EFI seeks a stay of the third-party discovery "until such time that Cornerstone **establishes it has trade secrets at issue**." [ECF No. 47, p. 2] (emphasis added); [ECF No. 47, p. 3]. In support of this position, EFI cites to *Revello Med. Mgmt. v. Med-Data Infotech USA*, 50 So. 3d 678, 679-80 (Fla. 2d DCA 2010) for the proposition that "Plaintiff must first **establish that a trade secret exists**, which means that Cornerstone must disclose the trade secret information at issue." [ECF No. 47, p. 8] (emphasis added).

However, post-*Revello* Florida state and federal courts have rejected a requirement that plaintiff in a trade secret misappropriation case must prove the existence of its trade secrets before proceeding with discovery. *See, AAR*, 98 So. 3d at 188 ("[t]o the extent that *Revello*… can be read to require a threshold finding as to the existence of the trade secret in misappropriation cases, we reject that notion"); *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016) (characterizing the decision in *AAR* as "rejecting the idea that the court must make a threshold finding as to the existence of a trade secret to proceed to discovery.")[1] In

---

[1] EFI's reliance on *Sea Coast* and *Del Monte* is equally misplaced. *Sea Coast Fire, Inc. v. Triangle Fire, Inc.*, 170 So. 3d 804, 808 (Fla. 3d Dist. Ct. App. 2014); *Del Monte*, 148 F. Supp.2d at 1324-25. Both *Sea Coast* and *Del Monte* discuss the standard for describing trade secrets where a party is resisting disclosure of those trade secrets pursuant to the Florida state statutory trade secret privilege. *Sea Coast Fire, Inc.*, 170 So. 3d at 808; *Del Monte*, 148 F. Supp. at 1323-24. Here, Defendant is the party resisting discovery, not Plaintiff.

8

*AAR*, the Defendant sought *certiori* relief based on its claim that the trial court was required to make a threshold finding that the allegedly misappropriated trade secrets existed before ordering discovery. *AAR*, 98 So. 3d at 188. The Florida District Court of Appeals denied that portion of AAR's petition, holding "we reject AAR's argument that the trial court departed from the essential requirements of the law by failing to make a threshold finding that Matrix's allegedly misappropriated trade secrets actually existed before ordering AAR to disclose its own trade secrets…." *Id.*

Instead, courts reserve the opportunity to determine whether a trade secret exists until much later in the case. *Furmanite Am., Inc. v. T.D. Williamson, Inc.,* 506 F. Supp. 2d 1134, 1141 (M.D. Fla. 2007) ("[t]he term trade secret is one of the most elusive and difficult concepts in the law to define. The question of whether an item taken from an employer constitutes a trade secret, is of the type normally resolved by a fact finder after full presentation of evidence from each side"); *see also Serrala US Corp. v. Paschke*, 2022 WL 2234971, at *3 (N.D. Fla. May 16, 2022) ("the question of whether Plaintiff will be able to prove" trade secrets exist "will be decided at a later stage of the case"). Therefore, EFI's request that this Court require Cornerstone to prove the existence of its trade secrets **before** it may proceed with discovery contradicts applicable to the law and must be denied.

    **B. Defendant's Motion fails to demonstrate how Florida state law applies to Plaintiff's claims brought under federal law and the laws of several other states.**

Of note, EFI fails to cite to a single case holding Florida's purported misappropriation of trade secret standards apply to claims that were not brought under Florida law or to the Federal District Court in this case. For example, as recently noted by one Middle District Judge:

> the Court remains skeptical that state common law in this context creates a procedural prerequisite to engaging in discovery in federal court pursuant to the Federal Rules of Civil Procedure. To the extent that a plaintiff's FUTSA case is insufficiently pled in federal court, a defendant may file a motion to dismiss—or a motion for more definite statement—accompanied by a motion to stay discovery pending resolution of the motion to dismiss. Here, Defendant simply answered.

*US Thrillrides, LLC v. Intamin Amusement Rides Int. Corp. Est.*, 2023 WL 11693750, at *1, n.1 (M.D. Fla. Dec. 12, 2023). Here, Defendant did not file a motion to dismiss or a motion for a more definite statement. Instead, it filed the instant Motion demanding that Cornerstone establish these same documents as its trade secrets before proceeding with any discovery.

Moreover, Cornerstone has alleged several other claims that do not require the identification of trade secrets prior to engaging in discovery. For example, the DTSA does not incorporate any discovery procedure analogous to certain state law statutory requirements in trade secrets cases that require a plaintiff to first disclose trade secrets before being able to receive discovery from the defendant. *Skye Orthobiologics, LLC v. CTM Biomedical, LLC*, 2021 WL 6102432, *7-8 (C.D. Cal. Aug. 27, 2021) (denying defendant's request for discovery sequencing because the lawsuit was under the DTSA and ordering the parties to engage in simultaneous discovery). Plaintiff is not aware of any such requirements under the MUTSA, GUTSA, CUTSA, or its other claims.

Additionally, pre-discovery disclosure is particularly inappropriate in this case because the discovery process is the only way for Cornerstone to know exactly which version of the trade secrets were misappropriated. *St. Jude Med. S.C., Inc. v. Janssen-Counotte,* 305 F.R.D. 630, 633 (D. Or. 2015) (declining to require pre-discovery disclosure of a plaintiff's trade secrets because the discovery process was the only way for the plaintiff to know exactly what trade secrets were misappropriated). In *St. Jude*, the court determined that St. Jude did not have to identify its trade secrets with greater particularity before taking discovery from a non-party to determine what a former employee took. *Id.* at 641. The court found that St. Jude had a broad right to discovery but had no way of knowing which specific trade secrets had been misappropriated until it received discovery concerning how the former employee's new employer was operating. *Id*. Requiring St. Jude to identify its trade secrets without first knowing what its former employee had used at her new employer would put St. Jude in an unfair Catch-22, because "if the list is too general, it will encompass material that the defendant will be able to show cannot be trade secret. If instead it is too specific, it may miss what the defendant is doing." *Id.* at 640 (internal citations omitted).

Here, Plaintiff has already identified the alleged trade secrets that were misappropriated, namely the RFP, the CSA, and such similar documents as described in the subpoenas. Without the opportunity for discovery of the full extent of what was stolen, such as discovery of what EFI has sent to non-parties Alkami and Correlation, Cornerstone has no way to know which specific version of those documents were taken. Instead, Cornerstone has sufficiently alleged the title and contents of the

11

documents it believes have been misappropriated, as otherwise outlined herein.

IV. **Cornerstone has sufficiently identified and described the trade secrets at issue in this case.**

To the extent that Cornerstone is required identify its trade secrets with reasonable particularity, Cornerstone has already satisfied this burden. "Reasonable particularity" requires more than generic descriptions of categories, such as a list of components to which the alleged trade secrets relate. *See Knights Armament Co. v. Optical Sys. Tech. Inc.*, 254 F.R.D. 463, 467 (M.D. Fla. Nov. 20, 2008). Although the definition of reasonable particularity varies, "that standard generally requires that the plaintiff provide enough information about the alleged trade secrets (1) to put the defendant on notice of the nature of plaintiff's claims, and (2) to allow defendant to discern the relevancy of any discovery requests." *Uni-Sys., LLC v. U.S. Tennis Ass'n*, 2017 WL 4081904, at *4 (E.D.N.Y. Sept. 13, 2017) (internal citation omitted); *FlexSteel Pipeline Techs., Inc. v. Chen*, 2017 WL 11672823, at *2 (N.D. Fla. Nov. 30, 2017) (same). The standard is flexible and driven by the court's discretion. *Uni-Sys., LLC*, 2017 WL 4081904, at *4. Thus, the strength of the showing sufficient to identify trade secrets with particularity varies with the facts and stage of the case. *Id.*

Cornerstone's descriptions of its trade secrets easily meet this standard. In the FAC, Cornerstone first describes its proprietary RFP process as comprised of hundreds of pages and consisting of a structured taxonomy of more than 2,500 core processing system functional and technical requirements to which Cornerstone requires each prospective vendor to respond, and which allows Cornerstone to best evaluate market

vendors to service each of its clients' specific needs. [ECF No. 32 at ¶31]. The phrasing of Cornerstone's inquiries is unique in that questions are not designed to present or elicit a simple Yes/No response but are of an open-ended nature asking "How", "Explain", and "Describe". [*Id*. at ¶ 33]. The specificity of Cornerstone's requirements and RFP questions represents a deep process understanding that cannot be replicated without the cumulative learning from hundreds of projects and significant investment in the process. [*Id*. at ¶ 34]. Cornerstone's RFP process, proprietary system requirements, and questions distinguish Cornerstone from other firms in the marketplace. [*Id*.] Cornerstone even provided a visual example showing how an EFI requirement question was nearly identical to Cornerstone's. [*Id*. at ¶ 98].

Cornerstone also sufficiently identifies and describes its CSA as a trade secret. Cornerstone alleges that Wetzel and Martel improperly retained a copy of the CSA following their resignation of employment from Cornerstone and used and disclosed its contents to EFI. [*Id*. at ¶ 105]. The CSA spells out in detail exactly what a vendor is responsible for in these high-risk conversion projects. [*Id.* at ¶ 40]. The CSA and similar contractual documents, including the level of detail and accountability included therein, gives Cornerstone a strategic advantage in the industry. [*Id.* at ¶ 41]. Cornerstone even provided a side-by-side comparison of how EFI's new contractual addendum is nearly identical to the one Cornerstone and its predecessor NSI have used for many years. [*Id.* at ¶¶ 103-04].

Other courts, including federal courts in this district, have held that similar descriptions satisfy the reasonable particularity standard and allowed the plaintiff to

13

proceed with discovery. *See, e.g., Jabil Inc. v. Essentium, Inc.*, 2020 WL 708140, at *4 (M.D. Fla. Feb. 12, 2020) (finding plaintiff identified its trade secrets with particularity where it listed a unique configuration of components and specifically identified file names of files it contends were misappropriated by the defendant); *Selectica, Inc. v. Novatus, Inc.*, 2015 WL 12852957, at *5 (M.D. Fla. Mar. 26, 2015) (finding trade secrets had been described with reasonable particularity where a reasonable person could look at the document and recognize it as such); *Paul Johnson Drywall Inc. v. Sterling Grp. LP*, 2021 WL 5994718, at *5 (D. Ariz. Dec. 17, 2021) (denying motion for protective order staying discovery until plaintiff described its trade secrets with particularity where the complaint's allegations were more than vague, general descriptions); *Edgewell Pers. Care Co. v. O'Malley*, 2019 WL 7425133, at *4 (Conn. Super. Ct. Nov. 15, 2019) (denying in part defendant's motion to require pre-discovery identification of trade secrets and rejecting defendant's arguments that disclosing trade secrets would "facilitate opportunistic amendment of the plaintiff's claims").

Cornerstone's descriptions go far past vague, generic descriptions of categories or components of trade secrets. Cornerstone specifically identified the trade secrets it alleges were misappropriated by name, described their content, and even provided examples. EFI is clearly on notice of the nature of Plaintiff's claims and can discern the relevancy of any discovery requests. The non-party subpoenas seek information related to the very specific trade secrets identified in the FAC, namely the RFP, the CSA, and any similar documents that meet the definitions set forth in those subpoenas. [ECF No. 47-1 and 47-2]. In fact, similar to the documents in *Seletica*, a reasonable

14

person could identify the RFP and CSA as trade secrets. That is exactly what happened here – vendors recognized from the face of the documents that they contained Cornerstone's trade secret information, and the vendors reported the misuse to Cornerstone. [*See* **Exhibits A & B**].

As a result, it is clear that Cornerstone has more than sufficiently described its trade secrets with reasonable particularity for the purpose of the instant subpoenas, and it is clear that EFI is "on notice" of what it and its agents misappropriated. In fact, EFI filed the instant Motion to protect those same documents from disclosure. Any argument that Cornerstone has not identified these documents with reasonable particularity is, quite simply, frivolous.

**V.    The Alkami and Corelation subpoenas are narrowly tailored and appropriate under the law.**

Next, Defendant asks this Court to "enter a protective order prohibiting Cornerstone from issuing subpoenas seeking production beyond those limited trade secret documents" in which "Cornerstone is able to establish that there are trade secrets at issue." [ECF No. 47, p. 2]. For the reasons set forth above, even under the Florida law cited by Defendants, Cornerstone is *not* required to first establish that there are trade secrets at issue before it may proceed with discovery. *See AAR*, 98 So.3d at 188 (rejecting the notion that Florida law "require[s] a threshold finding as to the existence of the trade secret in misappropriation cases.") Instead, Rule 45 permits a party to serve subpoenas commanding third-parties to produce information that is relevant to any parties' claim or defense in the matter. *Jordan v. Comm'r, Mississippi*

15

*Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020) (stating that "it is generally accepted that the scope of discovery allowed under Rule 45" is allowed "to the extent it is 'relevant to [a] party's claim or defense'") (citation omitted).

Here, Plaintiff is entitled to reasonable third-party discovery as set forth by Rules 26 and 45. Plaintiff has sufficiently pled its claims and is entitled to move forward with discovery. The information sought by the subpoenas at issue is narrowly tailored to that which relates to the RFP, CSA, or any similar document. The subpoenas were issued based on statements made by each vendor wherein they reported that EFI misused Cornerstone's trade secret information, and this information is directly relevant to the claims and defenses asserted in this matter. No further protective order is warranted or appropriate in these circumstances.

## VI. The Instant Motion is premature and not filed in good faith.

Finally, to the extent that Defendant asserts this Court "should not require any production of EFI's trade secrets until a confidentiality agreement is entered between the parties," this request is not made in good faith. Plaintiff denies it has delayed discovery or acted inappropriately with regard to the proposed confidentiality order, allegations that will be discussed by separate response. With regard to this Response, it must be noted that prior to Defendant filing the instant Motion, Plaintiff proposed the following with regard to the third-party subpoenas:

> 1. All documents and information produced by Alkami and Corelation shall be treated as Attorney's Eyes Only (AEO as defined by the attached draft of the Confidentially Agreement) by both sides for a period of 14-days following the production date.

    2.    During the 14-day period, the parties shall evaluate the information produced and shall confer in good faith to determine whether an AEO designation is appropriate, can be removed, and/or whether protections covering such documents can be downgraded to another confidentiality designation (such as Highly Confidential which still provides a high level of protection in and of itself), as contemplated in the attached draft of the Confidentiality Agreement.

    3.    If an agreement cannot be reached as to the final designation, all documents and information produced by Alkami and Corelation in response to the subpoenas shall be designated as Highly Confidential (as defined by the attached draft Confidentiality Agreement) *unless* a party has filed a motion for protective order with the Court within the initial 14-day period. If a party has timely filed a motion for a protective order with the Court requesting that the Court order that certain documents shall continue to be subject to the AEO restriction, then Plaintiff agrees that both sides shall continue to treat the documents and information identified in the motion as AEO, pending resolution by the Court. In other words, we are willing to agree to a continuing AEO designation for any documents subject to a timely motion for a protective order during the time period that the motion is being decided.

*See* emails attached as **Exhibit C**. In filing this Motion, Defendant has failed to confer in good faith as required by Fed.R.Civ.P. 26(c)(1) and Local Rule 3.01(g). Specifically, Plaintiff proposed a reasonable solution to resolve the issues raised in Defendant's Motion, as outlined above. Defendant, however, ignored or otherwise refused this proposed solution without a counter-proposal or any other good faith attempt to resolve the issue, instead choosing to file the instant Motion. Accordingly, Defendant's failure to confer in good faith under applicable rules of this Court requires that the Motion must be summarily denied.

## VII. Plaintiff is entitled to an award of its attorneys' fees incurred in responding to this Motion.

Rule 37(a)(5)(B) states that if a motion for a protective order is denied, "the court may issue any protective order authorized under Rule 26(c) and must, after

giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." While Plaintiff recognizes that "the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust," the circumstances in this matter demonstrate that the motion was not substantially justified and an award of expenses would not be unjust.

As outlined herein, EFI's Motion was not filed in good faith. First, it seeks to protect the very same trade secrets that it argues Plaintiff has not sufficiently described. Next, the Motion blatantly and repeatedly misstates the law and seeks to mislead this Court by arguing "Plaintiff must first *establish* that a trade secret exists" before proceeding with discovery. [ECF No. 47, p. 2-3, 5-6, 7-9] (emphasis added). This is not the correct standard under Florida law, and there is no excuse for this oversight, particularly given the fact that *AAR* is cited in Defendant's Motion. [*Id*. at p. 7]; *AAR*, 98 So.3d at 188 (rejecting the notion that Florida law "require[s] a threshold finding as to the existence of the trade secret in misappropriation cases.") Then, compounding this error and in contravention to Rules 26 and 45, Defendant asks this Court for a protective order prohibiting Plaintiff from serving third-party discovery that seeks information outside of the trade secrets "Cornerstone is able to *establish*" at this early stage in this matter. [ECF No. 47, p. 2] (emphasis added). Finally, Defendant filed the instant "time sensitive" motion asking this Court to prohibit discovery from non-parties until the parties enter a confidentiality agreement without regard to the fact that

18

Plaintiff has already offered to hold the documents produced in response to the subpoenas as attorney's eyes only (not shown to either client) for a period of 14-days, and thereafter until the issue is resolved if Defendant timely files a motion to protect specific information produced. Despite these assurances, and in contravention to its duties to meet and confer in good faith, Defendant involved this Court in a dispute that was wholly unnecessary.

For these reasons, Plaintiff respectfully requests the Court deny Defendant's Motion in its entirety and enter an order that Plaintiff is entitled to an award of its attorneys' fees and costs incurred in responding to the Motion.

Date: August 15, 2024                    Respectfully submitted,

By:    /s/Kris Leonhardt
Andrew Froman
Fla. Bar. No. 0019429
FISHER & PHILLIPS, LLP
101 E. Kennedy Boulevard
Suite 2350
Tampa, Florida 33602
Telephone: (813) 769-7505
Fax: (813) 769-7501
afroman@fisherphillips.com

Michael E. Bonner
Florida Bar No. 111907
FISHER & PHILLIPS LLP
201 East Las Olas Boulevard
Suite 1700
Fort Lauderdale, Florida 33301
Telephone: (954) 525-4800
mbonner@fisherphillips.com

Pavneet Uppal
Arizona Bar No. 016805

19

Kris Leonhardt
Arizona Bar No. 026401
FISHER & PHILLIPS LLP
3200 N. Central Avenue, Suite 1550
Phoenix, Arizona 85012-2487
Telephone: (602) 281-3400
Fax: (602) 281-3401
puppal@fisherphillips.com
kleonhardt@fisherphillips.com

Nicole B. Holtzapple
Florida Bar No. 0086774
FISHER & PHILLIPS LLP
1230 Peachtree Street, NE,
Suite 3300
Atlanta, Georgia 30309
Telephone: (404) 231-1400
Fax: (404) 240-4249
nholtzapple@fisherphillips.com

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that, on this 15th day of August 2024, the above and foregoing document was electronically filed and served via the court's CM/ECF filing system, which will send a notice of electronic filing to: April Lynn Boyer, Esq. and Jonathan B. Morton, Esq.; K&L Gates, LLP, 200 South Biscayne Blvd, Suite 3900, Miami, FL 33131; April.Boyer@klgates.com; Jonathan.Moton@klgates.com; (Counsel for Defendants Trisa Wetzel, Amy Martel, and Engage Fi.). I further certify that there are no non-CM/ECF parties.

/s/ Kris Leonhardt
Kris Leonhardt

FP 51808159.3